Good morning. I introduce the court. My name is Michael Burke, and I represent Mr. Francisco Montes-Vargas, and I will attempt to reserve two minutes of my time before rebuttal. A screening panel of this court ordered the parties to address the issue of whether the 292-1 sentence imposed on Mr. Montes for his convictions for conspiracy and possession with intent to distribute was substantively unreasonable because that sentence was 172 months longer than any other sentence imposed on the co-defendants in this case, and also because the record presented evidence that the district court may have placed, as this court described it, undue emphasis on Mr. Montes' refusal to accept responsibility for his conduct in sentencing. Mr. Burke, let me ask you, with respect to the amount of method of fatiguing, the pre-sentence report said 30 pounds, and it says it's 34.5 pounds was stipulated in trial. If we find that that error requires remand for resentencing, do we have to address the substantive unreasonability issue? No, Your Honor, you do not. If the court were to remand for open sentencing, no, you would not. And on the issue of the procedural error, and as this court knows under Gall and Hardy, the court usually addresses the procedural error first. The government has agreed, has conceded, that the amount of drugs attributed to Mr. Montes in the PSR was incorrect. So the only issue that we have is whether this is subject to clear error. This was not brought up before the district court, is whether clear error occurred in this case. We submit that under the U.S. Supreme Court's decision last term, and I will leave it up to Martínez, that it absolutely did, because Mr. Montes was sentenced under the incorrect basis that's loving. The government responds that there are additional drugs for which Mr. Montes would be responsible. As I read this record, they don't appear to be in the record. They do not, Your Honor. They are not part of the sentencing. Now, let me clarify, however, that evidence about a seizure of drugs was in the record, but they're not part of the PSR, in order to do judgment first. That's absolutely correct. I take it the government's point is that the judge could well end up in the same place, but as I understand it, the amount of drugs here doesn't change the sentencing range, does it? Yes, it does, Your Honor. The amount of drugs that was attributed to Mr. Montes in the PSR increased the space that's level 5 or 6, as I recall. I guess my question is, if in fact, the judge knew he had 23 of them, 17 doesn't change the sentencing range, does it? The additional 17 or 19, whatever the government thinks Well, it would increase it from 36 to 38. Right, it would put it back at the same 38 that the district court brought it into dealing with in the first place. This would require, though, a factual finding by the district court, which never occurred, and this court cannot make that factual finding in the first instance. So it would require a remand for resentencing, and as a result... Could the district court, as a representative of the court, be amended to include this other I believe the district court would have that authority, Your Honor, yes, but then it would still require a finding by the district court after the parties have been allowed to argue whether there was, in fact, whether it qualified as relevant conduct. So, and if this matter were returned, there are other factors as well. As the court is aware, with the drugs minus 2 amendments, Mr. Montes' sentences are already falling to low levels, lower. Now that isn't necessarily something this court would address in the first instance, but I kind of suggested something that you can't take into consideration. Right, if we remanded for resentencing under open record, the court could take this additional authority into account. Now, here's a question I always hate to ask folks. Could you end up worse if you remanded on an open record? I've thought about that, Your Honor. Could we end up worse? I don't believe so, and I think one of the reasons for that is that that goes to the substance of error in this case. I believe that it's painfully clear from the record in this case that the district judge who sentenced Mr. Montes was angered by his refusal to acknowledge the guilty sentence here. And I think it is evident from the sentence that the district judge reposed that the 2-1 sentence was a reflection of that. In fact, to refer to Mr. Montes' refusal to accept responsibility as a form of malevolence. If this case goes back, for better or for worse, the case is then reassigned to a different judge, so we have that factor as well. Okay, I suppose it's not really relevant. I was just wondering, because my question was, do you really want to go to jail? Well, it's always a concern. And given the fact that Mr. Montes is currently facing 24 or so years, it was a risk that he and his superiors were willing to take. We also have requested, this is a, this of course would make the sentencing issue of Mr. Montes. I think that court actually reversed his convictions for errors that occurred with regard to testimony from the government's primary agent, DEA agent Paul Back. There was evidence, 701 evidence, from Ejen Back with regard to a television conversation that occurred between Mr. Montes and his wife the day after the seizure of the drugs. That testimony was improper under Rule 701. It was speculative. It was not objective. It was not objective, no, Your Honor. There is an additional aspect here, again, not objective too, which is that there was no dual enrollment instruction given in this case. And this court held, Farah, that that is plain error. So you are automatically facing the fact that there was plain error with regard to the instructions of the jury on Ejen Back's testimony in 701-702 testimony. So the issue is, is there a reasonable probability that the errors, those two errors, affected the verdicts in this case? Now, reasonable probability is less than a component of the evidence. There was evidence presented to trial by a DEA agent. There was visual confirmation that Mr. Montes was at the site of the drug seizure. There was voice identification for many of the telephone calls. But the primary focus of the government's closing argument and the judge's determination and sentencing with regard to Mr. Montes' guilt was the conversation between Mr. Montes and his wife. And here's my question about that. Your position, your client's position at trial, was that he wasn't the guy in the conversation. Given that position, how was he prejudiced by the agent's testimony? In other words, there was no, your position at trial wasn't, well, they're not really talking about drugs. They're talking about drug users and groceries. Defense position was, that's not him. And you said, you know, we put him in front of numerous people. You said that was him. You said there was substantial evidence. I'm not sure I could conclude that. So how were you prejudiced against him? Well, it's a fine point, Your Honor. And that is that his defense was that he was not the person that he and the government believed was an impostor. And his attorney even conceded at a closing argument that Mr. Montes may well have been a participant in some of these phone calls, but that he was not an imposter. And so that is a distinction. And his defense was, I am not the person that the government has been searching for. In fact, there was a confidential informant who spent 15 minutes with Costas, and they found him. And in the 7-0-1 testimony, you know, the goal is to investigate whether he's an imposter. And he's an imposter. Is that adverse? I mean, the evidence was just in that. And the fact, I don't think the 7-0-1 had what it would have seen. I don't think it passed 100 percent. Oh, yeah, this is, you know, I was going to be right. But you can't conclude that. No, it was not. I don't know really much whether Mr. Montes, in this phone conversation, whether that evidence indicated that he himself was a drug dealer or thing. But I'm trying to figure it out. He wanted to save his time for a bottle of whiskey. Thank you, Your Honor. Thank you. Mr. Morse, if I could. Thank you, Your Honors. Jim Morse with the United States and the District of Arizona. I will begin briefly with the issue of the plaintiff in testimony that defense raised at the end there. The evidence, even if there was some error in the testimony that the government concedes or what's known as the defense's fly swipe for a little isolated statement by the case agent, who never identified the person on those phones as the person sitting in the courtroom. You talked about the conversations and the meaning of some of those conversations in place. It's usually difficult. And I think, you know, you're putting it as a difficult time to start. I'm not sure why his experience gives him the ability to interpret those essence in that way. You're correctly right, Your Honor. His experience, if not his experience of this investigation and listening to those calls, and that's why I'm saying that that's kind of fly swiping. Well, I looked at the rest of the calls. Is there some other place where she says, stop being a drug dealer? No. In fact, that comment came at the end of a long conversation about drug trafficking activities. Yeah. Look, I don't want to spend too much time on it. I guess this is an observation. Sometimes 701 testimony really goes beyond the observations of the agent. And this is, I think, maybe one of those instances. There's no objection to it. I'm not sure how, you know, I'm not sure how Mr. Monteslavo is prejudiced. I would have a hard time seeing it being within his experience of this investigation. I'll leave it then to talk about the plain error and the harmlessness. This is harmless, not only harmless, but a harmless deal and a reasonable deal. The defense says that in closing government that the defense attorney may have conceded. He did not concede that that was the defendant on those calls. All he said was, you can listen to those calls and determine whether it's ever proved. He was still up until the very end, despite all the overwhelming evidence, still disputing the fact whether that was the defendant on these calls. There was two eyewitnesses who identified this defendant. There was the adorable phone calls in which this defendant self-identified as Montes or Francesca Montes. There was the voice identification by two different agents who listened to all the calls, one of whom had spoken to the defendant in person. There was the jail calls where the defendant made incriminating statements regarding some of his co-conspirators, specifically yelling at his mother, yelling at his mother, his wife, when he mentioned, she mentioned Leonardo, reminding his wife not to talk because her phone was caught in all this. And then the overwhelming piece of evidence, which I take a very different view of closely, argument than defense did, the government focused on the fact of the calls to the wife. It did not argue about the content of the calls. It was the fact of the calls. Two years before, this defendant was calling the 6667 number. Hostess was calling the 667 number unanswered to calls. And then when he was in jail, he called the 667 number 25 times. Well, Mr. Gardner, this defendant was a testimony of Francesca's children. It was the defendant's comment as to whether or not it looked like a testimony. The barroom agent's testimony was we had to prove that Hostess was a drug dealer, and then we had to prove that the defendant was Hostess. So the man's testimony was to put the calls in context of proof that Hostess was a drug dealer. As I mentioned earlier, he never once identified the defendant as Hostess. The subsequent circumstantial evidence of the calls, the eyewitnesses, and the voice identification is one proof that this defendant sitting in the court was the Hostess that Agent Mack talked about. Hostess, you're like a Persian meditator. It's a pseudonym for this defendant. Can you turn to me for a second just in case you want to? I'll sit down. And let me just let you speed it up for me. The prescription court has a long amount of drugs used according to the circumvention trial. There's such a conditional amount that you wouldn't want to talk about. It changes the offense level. From a 36 to a 38. I guess the right amount would change it back down from 38 to 36. So the judge was operating off the wrong offense level. It's based on that narrow bit of information. Why isn't that enough for us to see the adverse effect? I don't think it's enough because it wasn't an objective trial. And I realize that the defense has cited some cases that say when the offense level is an error. The government's position is, in this case, the offense level was not an error. And that's the reason the defense didn't judge it. You think it's not an error because of something that the PSR doesn't take into account. And you require us, in fact, to be the sentencing. To say, well, we're going to take into account that extra amount, and therefore the judge was right. I disagree because I think in this case, Your Honor, you have a PSR that's an objective too. The court's president was allowed to rely on that PSR. The defense is now claiming that it's an error. And I think the burden is on the defense. Well, exactly. You don't doubt that it's an error. It refers to the amount of drugs that is used. You consider the seizures, yes. I don't think it is an error. Correct me if I'm wrong. I think the burden is on defense. They're a plain error of you to establish that he was, in fact, harmed by that. Well, and his answer is, well, the offense doesn't change. Your answer is, well, it might not have because the judge surely would have found these other drugs to be involved and would have gone up to Average for that. My problem with that is I don't think the judge would have surely would have found them to be involved. We're not fact-finders. You're not fact-finders, Your Honor. The evidence in this trial, this defendant was convicted of a conspiracy count that went all the way through May. The second seizure happened in January. It's not a fact-finding function. The only reason this wasn't brought up is because everybody knew he was at level 38. Anyhow, I just, let me, let me give you my, be straight on what my concern is here. I'm not sure the sentence is substantively reasonable, but it's quite, and it's quite long in comparison. Now, there may be good reasons for that, but given that there was a mistake as the defendant involved in the case, we couldn't use the judge to take a second look at this. It burdens us up to the core. I know. But I don't think it's necessary or even required in this case. When you look at this record, this defendant was not harmed by the, the offense level calculation. And I'm hesitant to touch on it. I think the question you ask the defense is very known. On open record, the other drugs come in, and all of the purity analysis would come in, which would then take him in. He's taken that risk. We'll send it back. We'll send it on an open record, and maybe you can look them up, too. I don't create, but he will no longer, in all likelihood, be eligible for the minimum reduction because of this amount. I understand. That's why I asked Mr. Burke that question. It may well be that sometimes you didn't get what you asked for, but he's asking for it. I understand. I stand by my argument, Your Honor. I don't think that this defendant was harmed. Certainly, under plain error, there's nothing about the fairness and integrity of the proceeding that corrected this level. The method to get there might have been flawed, but the result was still correct and supported by the record and supported by the two counts of conviction that this defendant received. Why didn't you increase the number of sections on the PSR? The PSR, the method the PSR used was incorrect, yes, Your Honor. But the end result was correct. Why didn't you increase the number of sections on the PSR? I would say no under plain error. The court was entitled to rely on the unobjective, two-factor findings of the PSR. Turning to the substance of the issue, Your Honor, on the sentencing, the defense seems to have sifted the argument a little bit. And I understand the remand position from the Ninth Circuit. But the only way that what Judge Martone did would be correct is if he was punishing him for exercising his right to trial. And during the argument here, defense talked a lot about punishing him for not accepting responsibility. That is a completely appropriate thing for a trial judge to do. There's a whole line. Just by not accepting responsibility, he loses two or three points depending on who he's punishing. Right. He loses 200 points each time. That's already an excuse not to do anything. Right. And this defendant was sentenced at the low end of his guideline range. The judge didn't give him a high-end backline sentence, didn't vary above the guideline sentence. He just looked at him and said, I sat through this trial, and you're still getting up here and denying this crime. And I know you're guilty. I think a defendant can either not profess his innocence during elocution. He can say nothing during elocution, or he can admit his guilt. But if he gets up there and professes his innocence, it's an entirely proper for this court for a sentencing judge to take that as one of the 3553A factors. And I can cite a whole bunch of other cases that this court has ruled as offensive. Actually, I took Mr. Burke to take something else from the judge's sentencing reports. I took this to the judge was trying to get this sentence to the low end of the range, which is what compels me, on the other hand, to think that if you thought the offense level was slightly lower, you might have given him a sentence to go all the way to the other range. I agree with you, Your Honor. He, in my opinion, sustained one objection. The defense made one objection that he sustained. I think he was in error on that. If you look at the record, we both kind of acknowledge that he was giving the benefit of the doubt. The judge was trying to lower the range, but he specifically did not want to go all of the range because this defendant was not similarly situated with the co-defendants. I'm not going to go into it. It's all in my pleading on why there was a substantial difference. Well, you've arrived at the end of your in overtime. So in… Thank you very much. Thank you. Mr. Burke, you've got a minute, I think. Very briefly, Your Honor, I'd like to address your point on whether there is substance of error in this case. Two points on that. First, I don't believe that the judge, the district judge, was trying to do his charges. Once he said he favored what he was referring to, he refused to accept responsibility as a malevolence. That's not beside any thought. No, but what you're really saying is he was at the bottom end of the guideline range. Well, how did these come in, sirs? Well, let me… You're in the right range. I understand your argument. You're in the wrong range. But there's another error as well, and that is the judge, on his own, was determining the reasonableness of Mr. Montes' sentences. Compared to the other defendants who were actually caught and convicted and sentenced, he never looked at as would be required under Rojas' law. What about the other five co-defendants who were never apprehended, two of whom were the leaders of this drug conspiracy, and two others were managers? Mr. Montes dealt with low back, so he didn't even consider that. That was substantive error. Thank you. Thank both counsel for their helpful arguments. This case is split.
judges: Siler, Canby, Hurwitz